THE DIAMOND BRICK COMPANY, RESPONDENT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, APPELLANT.

*Gate in a fence inclosing a railroad company's tracks — the company is not bound to keep it shut.*

Where a gate has been built, in accordance with law, by a railroad company, in the fence inclosing its tracks, for the use of the owner of the adjacent land, the railroad company is not bound, as between it and the landowner, to close the gate even though its officers have noticed that it is open.

Where the owner leaves the gate open, neither the owner nor his employees nor lessees have any right of action against the railroad company because of an injury to a horse which passes through such open gate onto the tracks of the railroad company and is injured.

APPEAL by the defendant, the New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Rockland on the 20th day of May, 1890, after a trial before the court and a jury at the Rockland County Circuit, at which a verdict was rendered in

favor of the plaintiff for the sum of seventy-five dollars; and also from an order denying the defendant's motion for a new trial made upon the minutes of the court, entered in the office of the clerk of said county on the 10th day of May, 1890.

*Ashbel Green* and *Herbert E. Kinney*, for the appellant.

*George W. Weiant*, for the respondent.

BARNARD, P. J.:

The West Shore Railroad runs through the farm of Emma Reed. The railroad fenced its track and left a gate for the use of the farm owners. The Diamond Brick Company, by the permission of the owner, had pastured a horse upon the Reed farm. The field in which the horse was pastured ran back to the railroad. The gate in question was a part of the fencing when it was shut. In September, 1886, the horse got upon the railroad track and was killed by an engine of defendant which operates the West Shore Railroad. The fence was a wire fence four wires high, fastened to upright posts, and was three or four feet high. There was some claim made that the fences were made without sufficient strength of wire and staple, but the claim was so entirely unaccompanied by any evidence that the horse got on the railroad track through these defects, that the judge told the jury that the evidence was insufficient to justify a finding on the ground that the fence was insufficient. Under the evidence the gate was continually kept open, at least there is evidence which justifies the jury in so finding. The only question is, therefore, whether or not, as against the land owner, the railroad company is bound to close the gate when its officers have notice that it is open. There seems to be no basis for a charge of negligence against the defendant. The gate was built for the owner, and it was built in accordance with law for the use of the owner. The railroad could not control the use of the gate. After use the owner either did not shut the gate or permitted it to remain open for long intervals of time. If this is neglect on the part of the company arising from a failure to shut the gate, why is it not neglect on the part of the owner to leave it open while using it for the purpose of the farm from day to day all summer or a great portion of the summer? She took her risk as to the cattle getting on the railroad by the open gate, and she

hired the pasturage to the plaintiff upon the same condition. It would have been unwarrantable in the defendant to shut the gate on the day of the accident if the owner was using the crossing; and a failure to inquire whether or not the gate was open by the farm employees using the same is not a negligent act. The proof, therefore, fails to show any neglect in respect to the gate in question. The owner for her own convenience left the gate open, and neither she or her employees or lessees can complain of the railroad company for not shutting it.

The judgment should be reversed and a new trial granted, costs to abide event.

DYKMAN, J., concurred.

Judgment and order denying new trial reversed and new trial granted, costs to abide event.